**Plaintiff Exhibit A**

PHYSICIAN AGREEMENT
EXHIBIT B

COMPANY/
TAXPAYER ENTITY: Spotsylvania Hospitalist Group, LLC
LOCATION: SPOTSYLVANIA REGIONAL MEDICAL CENTER
PHYSICIAN: Juan Munoz, MD
REIMBURSEMENT:
    Productivity Component:
        Physician shall work for Company a total of 182 twelve hour shifts per year and a total minimum of 15 twelve hour shifts per month, or the equivalent (for example 18 ten hour shifts), and in exchange, Company shall compensate Physician the greater of A or B:
        A)    $270,000 per year; or
        B)    $59.47 per hour for daytime shifts (7am-7pm) + $25 per wRVU
            $101.55 per hour for night time shifts (7pm-7am) + $25 per wRVU

    Quality Component:
        Inherent in Physician's compensation is the expectation that the following five items are met. Failure to meet these will result in the deduction in Physician's compensation by 4% of the hourly rate (up to a total of 20%) for each item not met each month.
        1)    No Core Measure Fall-Outs
        2)    No Significant Quality Concerns (verified by peer review, chart review and/or other investigation when appropriate)
        3)    No Substantiated Written Complaints from medical staff or patients (verified by peer review, chart review and/or other investigation when appropriate)
        4)    A cooperative and positive attitude
        5)    Participation toward achieving Company's quality and efficiency goals

    Monies from any item that is not met in a particular month will be redistributed to the hospitalist physicians providing services at Hospital who met all five items during that same month the deductions were made.

    Company maintains the rights to adjust, modify, or change Physician's compensation upon thirty days' notice.

PROFESSIONAL LIABILITY INSURANCE: The Company shall provide and pay for professional liability insurance covering Physician for services provided under this Agreement for the Company. Company shall maintain such professional liability insurance subsequent to the termination of this Agreement for a period that exceeds any applicable statute of limitations in the state in which the Hospital is located or shall purchase an extended reporting endorsement.

In witness whereof, the parties hereto have executed this Exhibit B and all the terms and conditions described in PHYSICIAN AGREEMENT and EXHIBITS thereto.

AGREEMENT AND ACCEPTANCE:

_____         Apr 28, 2014
Juan Carlos Munoz-Gonzalez,MD (Apr 28, 2014)    _____
Juan Munoz                                                    Date

_____         Apr 28, 2014
Zane Reasoner (Apr 28, 2014)                 _____
**Spotsylvania Hospitalist Group, LLC**         Date

# PHYSICIAN AGREEMENT

This PHYSICIAN AGREEMENT ("Agreement") is entered into, and effective __July 2, 2014__ (the "Effective Date"), by and between the company identified in Exhibit B ("Company") and physician identified in Exhibit B ("Physician") attached hereto and incorporated herein by reference.

WHEREAS, the Company is engaged in the business of providing hospitalist services to hospitals or healthcare systems ("Hospital");

WHEREAS, the Physician represents and warrants to be a duly qualified and licensed physician, and to meet the qualifications required thereof under the Hospital Agreement and desires to provide such hospitalist services;

NOW THEREFORE, in consideration of the mutual covenants and agreements contained in this Agreement, the parties hereto, each intending to be legally bound hereby, agree as follows:

1. **PHYSICIAN'S SERVICES**

    A. The Physician agrees to be credentialed in accordance with the Hospital Rules and Regulations following the execution of this Agreement. If, for any reason, the Physician is not credentialed or accepted as a member of the medical staff of a Hospital, this Agreement may be terminated immediately at the sole discretion of the Company. If, for any reason, the Physician is knowingly in violation of the Hospital Contract, or Physician's membership on the medical staff of a Hospital is suspended, revoked, or terminated, or Hospital requires the replacement of the Physician, this Agreement may be terminated immediately at the sole discretion of the Company.

    B. The Physician shall submit schedule requests one month prior to each three month scheduling block. The Company will attempt to honor schedule requests to the extent they are consistent with the Hospital Agreement, shift availability, and practicable. The Physician on occasion may be asked to work shifts he/she has not requested. Shift distribution will be equitable and mutually agreed upon by the parties. Desirable shifts, with respect to productivity potential, will be distributed on an equitable basis and are not subject to preference by seniority within the Company.

    C. If the Physician is unable to fulfill his/her work obligations under this Agreement for a temporary period for personal or health reasons acceptable to the Company, the Physician shall promptly notify the Company in writing in advance of such temporary unavailability and of the reason. Any substitute physician must comply with all the terms of this Agreement and the Hospital Agreement. Parties may from time to time adopt backup and scheduling policies.

    D. For recruitment, planning, and physician satisfaction purposes, once per year, by July 1st, Physician shall submit to the medical director in writing the number of shifts per month Physician would like to regularly receive per month. The number of shifts requested will be honored whenever feasible and physicians who have been in the Company for greater than one year will be given priority with regards to the number of available shifts requested per month. The number of shifts allotted to Physician per month can only be changed if another physician in the group also agrees to change shift allotment (because the number of shifts available each month is fixed). Physician understands that flexibility is essential to hospitalist staffing and that, if needed; Physician may be requested to work as many as two shifts per month more than the Physician's requested number of shifts. In addition, any part-time Physician (working 120 hours or less a month) agrees to work a proportionate number of nights, weekends, and holidays.

Initials 

1

2. **PHYSICIAN COMPENSATION**

   A. The Physician shall be paid on or about the fifteenth day of each month following the month of service.

   B. The Company agrees to compensate the Physician pursuant to Exhibit B.

3. **PROFESSIONAL STANDARDS OF PHYSICIAN**

   A. The Physician represents that he/she is duly qualified and licensed to practice medicine in the United States of America and the applicable state of service. If the Physician's license to practice medicine is revoked or suspended, the Company shall have the right to terminate this Agreement immediately.

   B. The Physician agrees that, in the performance of his/her duties under this Agreement, he/she shall observe standards of professional medical practice and ethics, including those required by the contract with the Hospital or by the medical staff of the Hospital, and any failure on the part of the Physician to do so shall constitute grounds for the immediate termination of this Agreement by the Company. The Physician shall comply with all general rules and regulations established by the Hospital for the provision of services.

   C. If any functions of this Agreement are not being performed by the Physician, the Company may require the physician to complete such functions. Functions include, but are not limited to, the submission of complete, correctly prepared charts. Repeated non-performance of this or other functions of this Agreement may result in an adjustment of the Physician's compensation or termination of the Agreement.

   D. The Physician agrees to timely notify the Company orally (and immediately confirmed in writing) of any patient or Hospital claims of which the Physician has knowledge or in which he/she is involved while rendering medical service at the Hospital. A patient or Hospital claim may be an accident or a situation that results in a claim or threat of a claim.

4. **RECORDS**

   All business and financial records of the Company including, but not limited to, invoices, billings and all records pertaining to providing hospitalist service treatment as herein set forth shall be the property of the Company during the term and following termination of this Agreement. The Company agrees to provide the Physician with a patient billing summary. This clause specifically excludes billing summaries and/or confidential information related to other Physician's working with the Company.

5. **CONFIDENTIALITY**

   The Physician understands and agrees with the Company's express desire that all of the Company's business, financial, medical, legal and other affairs be conducted with the utmost respect for the privacy and confidentiality of the patient, Physician and Company. The parties agree, at all times during and subsequent to termination of this Agreement, to maintain in all respects the privacy and confidentiality of the affairs of the parties. The parties agree that any and all information acquired under this Agreement may not be used except as may be permitted by this Agreement in the normal course of business. The conduct of the parties shall be compliant with all applicable state and federal laws.

Initials 

Document Integrity Verified     EchoSign Transaction Number: X87W6BF3RXB5Y74

6. **LIMITATION OF PRACTICE**

   A. During the term of this Agreement, the Physician agrees not to accept as a private patient into an outpatient clinic, outside the terms and scope of this Agreement, any patient who is admitted to and treated in the Hospital unless Physician has received prior written consent of the Company or Hospital. The Physician further agrees not to solicit patients for the sale of goods and services. In addition, the Physician agrees not to solicit client Hospitals for physician services outside the terms and conditions of this Agreement.

   B. All fees, compensation, monies and other things of value received or realized as a result of the performance of hospitalist services by the Physician at the Hospital, shall belong to, be paid to, be assigned to and be delivered to the Company. The Physician agrees, to the extent possible, upon request by the Company, to render an accounting of all transactions which relate to the Physician's practice (within the scope of this agreement) as a Physician during the term of this Agreement.

   C. The Physician hereby appoints the Company as representative and attorney-in-fact for financial matters related to services performed by Physician under this Agreement, including managed care contracting, insurance and third party payer negotiations, and account collections. The Physician shall agree to participate in managed care plans and agreements in which applicable Hospitals participate in accordance with state and federal law.

   D. Parties agree to abide by the applicable Hospital Agreement.

7. **INCOME TAX TREATMENT**

   This Agreement constitutes an independent contractor relationship between the Company and the Physician. The Company shall not have any responsibility to withhold any taxes or other assessments that may exist in an Employer/Employee relationship, the payment of all such taxes and other assessments being the responsibility of the Physician and shall survive the termination of this Agreement. In the event the Company is called upon at any time for an assessment regarding any of the foregoing, the Physician shall, upon ten (10) days notice, provide the Company the funds with which to pay such assessment. Furthermore, the Physician shall have no claim under this Agreement or otherwise against the Company for vacation, pay, sick leave, retirement benefits, social security, workman's compensation, disability or unemployment insurance benefits of any kind. It is further understood that the Company shall neither have, nor exercise any control or direction over, the methods by which the Physician agrees to perform the Physician's said work and professional functions. The Company shall neither have, nor set standards for the duration or time under which the Physician performs the Physician's work and professional functions. The Physician agrees to perform his/her said work and professional functions at all times in strict accordance with currently approved methods and practices in the field of medicine in general and hospitalist medicine in particular, and in accordance with the standards required by the Hospital Agreement and the medical staff of the Facility.

8. **TERM AND TERMINATION**

   A. This Agreement is intended to commence on the Effective Date and to continue until July 1, 2015 and will renew automatically for subsequent one (1) year terms thereafter unless sooner terminated in accordance with the terms and conditions of this Agreement.

   B. The Company may terminate this Agreement immediately if the Hospital Agreement becomes null and void, suspended or terminated in whole or in part, or immediately, if Company is dissolved, or immediately, upon Company's determination that Physician is disabled for a period exceeding

Initials 

3

thirty (30) days.  Company may terminate this Agreement at any time for cause, or personal or professional misconduct.  The Physician may terminate this Agreement without cause upon ninety (90) days notice.  The Company may terminate this Agreement without cause upon ninety (90) days notice.

9. **INSURANCE**

    Company shall provide and pay for professional liability insurance covering Physician for services provided under this agreement for the Company in an amount not less than the minimum required by the Hospital or the state in which the Hospital is located.  Company shall maintain such professional liability insurance subsequent to the termination of this Agreement for a period that exceeds any applicable statute of limitations in the state in which the Hospital is located or shall purchase an extended reporting endorsement.

10. **MISCELLANEOUS**

    A.  This Agreement shall be governed by, and interpreted in accordance with, the laws of the state where services are provided.  Any particular provision of this Agreement determined to be invalid or unenforceable shall not affect the other provisions of this Agreement.  Waiver by the Company of a breach of any provision of this Agreement shall not operate nor be construed as a waiver by the Company of any subsequent breach by the Physician.  All covenants set forth herein shall be binding upon, and shall inure to the benefit of, and be enforceable by or for, the Company's successors and assigns. This Agreement, being for the personal services of the Physician, shall not be assignable by the Physician.  The portions of any and all paragraphs of this Agreement which pertain to rights and obligations extending beyond the term of this Agreement shall survive termination.  This Agreement amends and voids any previous agreement that contradicts with the express terms of this Agreement between the parties.  The Physician agrees that the professional services performed pursuant to this Agreement will be the sole responsibility of the Physician and the Physician shall be solely liable for his/her acts. It is the responsibility of the Physician to provide the Company with all the information, applications and signed documents required by the Hospitals, payers, billing service and insurance carriers in a prompt and timely manner.  If the Physician fails to provide the necessary applications, forms or information required by the above, the Company may immediately terminate this Agreement and seek any and all relief allowed by law.

    B.  The Physician agrees and intends to provide physician services as part of a qualified clinically-integrated joint arrangement.  As part of this arrangement, the Physician will participate in active and ongoing programs to evaluate and modify practice patterns of, and create a high degree of interdependence and cooperation among, the Physicians who participate in the arrangement, in order to control costs and ensure the quality of service provided through the arrangement.  The Physician expressly warrants that any agreement concerning reimbursement or other terms and conditions entered into or within via this arrangement is reasonably necessary to obtain significant efficiencies through the joint arrangement.

    C.  This Agreement may be amended from time to time by written agreement signed by each of the parties.

This Agreement has been executed as witnessed at EXHIBIT B attached hereto.

Initials 

4



# Juan Munoz, MD - Spotsylvania (FT)

EchoSign Document History　　　　　　　　　　　　April 28, 2014

| | |
|---|---|
| Created: | April 17, 2014 |
| By: | Kevin Yerovsek (kyerovsek@apollomd.com) |
| Status: | SIGNED |
| Transaction ID: | X87W6BF3RXB5Y74 |

## "Juan Munoz, MD - Spotsylvania (FT)" History

- Document created by Kevin Yerovsek (kyerovsek@apollomd.com)
  April 17, 2014 - 1:10 PM EDT - IP address: 65.50.1.210

- Document emailed to Jackie Newman (jnewman@apollomd.com) for approval
  April 17, 2014 - 1:12 PM EDT

- Document viewed by Jackie Newman (jnewman@apollomd.com)
  April 17, 2014 - 1:13 PM EDT - IP address: 65.50.1.210

- Document approved by Jackie Newman (jnewman@apollomd.com)
  Signature Date: April 17, 2014 - 1:14 PM EDT - Time Source: server - IP address: 65.50.1.210

- Document emailed to Juan Carlos Munoz-Gonzalez,MD (juanky_82@hotmail.com) for signature
  April 17, 2014 - 1:14 PM EDT

- Document viewed by Juan Carlos Munoz-Gonzalez,MD (juanky_82@hotmail.com)
  April 17, 2014 - 1:17 PM EDT - IP address: 72.73.28.82

- Document esigned by Juan Carlos Munoz-Gonzalez,MD (juanky_82@hotmail.com)
  Signature Date: April 28, 2014 - 6:20 PM EDT - Time Source: server - IP address: 166.137.85.131

- Document emailed to Zane Reasoner (zreasoner@apollomd.com) for signature
  April 28, 2014 - 6:20 PM EDT

- Document viewed by Zane Reasoner (zreasoner@apollomd.com)
  April 28, 2014 - 6:57 PM EDT - IP address: 173.53.36.217

- Document esigned by Zane Reasoner (zreasoner@apollomd.com)
  Signature Date: April 28, 2014 - 10:40 PM EDT - Time Source: server - IP address: 173.53.36.217



- Signed document emailed to Zane Reasoner (zreasoner@apollomd.com), Juan Carlos Munoz-Gonzalez,MD (juanky_82@hotmail.com), Jackie Newman (jnewman@apollomd.com), jstoppy@apollomd.com and Kevin Yerovsek (kyerovsek@apollomd.com)

    April 28, 2014 - 10:40 PM EDT



# PHYSICIAN AGREEMENT

This PHYSICIAN AGREEMENT ("Agreement") is entered into, and effective __April 1, 2015__ (the "Effective Date"), by and between the company identified in Exhibit B ("Company") and physician identified in Exhibit B ("Physician") attached hereto and incorporated herein by reference.

WHEREAS, the Company is engaged in the business of providing hospitalist services to hospitals or healthcare systems ("Hospital");

WHEREAS, the Physician represents and warrants to be a duly qualified and licensed physician, and to meet the qualifications required thereof under the Hospital Agreement and desires to provide such hospitalist services;

NOW THEREFORE, in consideration of the mutual covenants and agreements contained in this Agreement, the parties hereto, each intending to be legally bound hereby, agree as follows:

1. **PHYSICIAN'S SERVICES**

    A. The Physician agrees to be credentialed in accordance with the Hospital Rules and Regulations following the execution of this Agreement. If, for any reason, the Physician is not credentialed or accepted as a member of the medical staff of a Hospital, this Agreement may be terminated immediately at the sole discretion of the Company. If, for any reason, the Physician is knowingly in violation of the Hospital Contract, or Physician's membership on the medical staff of a Hospital is suspended, revoked, or terminated, or Hospital requires the replacement of the Physician, this Agreement may be terminated immediately at the sole discretion of the Company.

    B. The Physician shall submit schedule requests one month prior to each three month scheduling block. The Company will attempt to honor schedule requests to the extent they are consistent with the Hospital Agreement, shift availability, and practicable. The Physician on occasion may be asked to work shifts he/she has not requested. Shift distribution will be equitable and mutually agreed upon by the parties. Desirable shifts, with respect to productivity potential, will be distributed on an equitable basis and are not subject to preference by seniority within the Company.

    C. If the Physician is unable to fulfill his/her work obligations under this Agreement for a temporary period for personal or health reasons acceptable to the Company, the Physician shall promptly notify the Company in writing in advance of such temporary unavailability and of the reason. Any substitute physician must comply with all the terms of this Agreement and the Hospital Agreement. Parties may from time to time adopt backup and scheduling policies.

    D. For recruitment, planning, and physician satisfaction purposes, once per year, by July 1st, Physician shall submit to the medical director in writing the number of shifts per month Physician would like to regularly receive per month. The number of shifts requested will be honored whenever feasible and physicians who have been in the Company for greater than one year will be given priority with regards to the number of available shifts requested per month. The number of shifts allotted to Physician per month can only be changed if another physician in the group also agrees to change shift allotment (because the number of shifts available each month is fixed). Physician understands that flexibility is essential to hospitalist staffing and that, if needed; Physician may be requested to work as many as two shifts per month more than the Physician's requested number of shifts. In addition, any part-time Physician (working 120 hours or less a month) agrees to work a proportionate number of nights, weekends, and holidays.



Initials _____

Document Integrity Verified    EchoSign Transaction Number: XK5FMRCD4K25XEB

2. **PHYSICIAN COMPENSATION**

    A. The Physician shall be paid on or about the fifteenth day of each month following the month of service.

    B. The Company agrees to compensate the Physician pursuant to Exhibit B.

3. **PROFESSIONAL STANDARDS OF PHYSICIAN**

    A. The Physician represents that he/she is duly qualified and licensed to practice medicine in the United States of America and the applicable state of service. If the Physician's license to practice medicine is revoked or suspended, the Company shall have the right to terminate this Agreement immediately.

    B. The Physician agrees that, in the performance of his/her duties under this Agreement, he/she shall observe standards of professional medical practice and ethics, including those required by the contract with the Hospital or by the medical staff of the Hospital, and any failure on the part of the Physician to do so shall constitute grounds for the immediate termination of this Agreement by the Company. The Physician shall comply with all general rules and regulations established by the Hospital for the provision of services.

    C. If any functions of this Agreement are not being performed by the Physician, the Company may require the physician to complete such functions. Functions include, but are not limited to, the submission of complete, correctly prepared charts. Repeated non-performance of this or other functions of this Agreement may result in an adjustment of the Physician's compensation or termination of the Agreement.

    D. The Physician agrees to timely notify the Company orally (and immediately confirmed in writing) of any patient or Hospital claims of which the Physician has knowledge or in which he/she is involved while rendering medical service at the Hospital. A patient or Hospital claim may be an accident or a situation that results in a claim or threat of a claim.

4. **RECORDS**

    All business and financial records of the Company including, but not limited to, invoices, billings and all records pertaining to providing hospitalist service treatment as herein set forth shall be the property of the Company during the term and following termination of this Agreement. The Company agrees to provide the Physician with a patient billing summary. This clause specifically excludes billing summaries and/or confidential information related to other Physician's working with the Company.

5. **CONFIDENTIALITY**

    The Physician understands and agrees with the Company's express desire that all of the Company's business, financial, medical, legal and other affairs be conducted with the utmost respect for the privacy and confidentiality of the patient, Physician and Company. The parties agree, at all times during and subsequent to termination of this Agreement, to maintain in all respects the privacy and confidentiality of the affairs of the parties. The parties agree that any and all information acquired under this Agreement may not be used except as may be permitted by this Agreement in the normal course of business. The conduct of the parties shall be compliant with all applicable state and federal laws.



Initials _____

**6.   LIMITATION OF PRACTICE**

   A.   During the term of this Agreement, the Physician agrees not to accept as a private patient into an outpatient clinic, outside the terms and scope of this Agreement, any patient who is admitted to and treated in the Hospital unless Physician has received prior written consent of the Company or Hospital.  The Physician further agrees not to solicit patients for the sale of goods and services.  In addition, the Physician agrees not to solicit client Hospitals for physician services outside the terms and conditions of this Agreement.

   B.   All fees, compensation, monies and other things of value received or realized as a result of the performance of hospitalist services by the Physician at the Hospital, shall belong to, be paid to, be assigned to and be delivered to the Company. The Physician agrees, to the extent possible, upon request by the Company, to render an accounting of all transactions which relate to the Physician's practice (within the scope of this agreement) as a Physician during the term of this Agreement.

   C.   The Physician hereby appoints the Company as representative and attorney-in-fact for financial matters related to services performed by Physician under this Agreement, including managed care contracting, insurance and third party payer negotiations, and account collections.  The Physician shall agree to participate in managed care plans and agreements in which applicable Hospitals participate in accordance with state and federal law.

   D.   Parties agree to abide by the applicable Hospital Agreement.

**7.   INCOME TAX TREATMENT**

   This Agreement constitutes an independent contractor relationship between the Company and the Physician.  The Company shall not have any responsibility to withhold any taxes or other assessments that may exist in an Employer/Employee relationship, the payment of all such taxes and other assessments being the responsibility of the Physician and shall survive the termination of this Agreement.  In the event the Company is called upon at any time for an assessment regarding any of the foregoing, the Physician shall, upon ten (10) days notice, provide the Company the funds with which to pay such assessment.  Furthermore, the Physician shall have no claim under this Agreement or otherwise against the Company for vacation, pay, sick leave, retirement benefits, social security, workman's compensation, disability or unemployment insurance benefits of any kind.  It is further understood that the Company shall neither have, nor exercise any control or direction over, the methods by which the Physician agrees to perform the Physician's said work and professional functions. The Company shall neither have, nor set standards for the duration or time under which the Physician performs the Physician's work and professional functions.  The Physician agrees to perform his/her said work and professional functions at all times in strict accordance with currently approved methods and practices in the field of medicine in general and hospitalist medicine in particular, and in accordance with the standards required by the Hospital Agreement and the medical staff of the Facility.

**8.   TERM AND TERMINATION**

   A.   This Agreement is intended to commence on the Effective Date and to continue until March 31, 2016 and will renew automatically for subsequent one (1) year terms thereafter unless sooner terminated in accordance with the terms and conditions of this Agreement.

   B.   The Company may terminate this Agreement immediately if the Hospital Agreement becomes null and void, suspended or terminated in whole or in part, or immediately, if Company is dissolved, or immediately, upon Company's determination that Physician is disabled for a period exceeding



Initials _____

Document Integrity Verified                                    EchoSign Transaction Number: XK5FMRCD4K25XEB

thirty (30) days.  Company may terminate this Agreement at any time for cause, or personal or professional misconduct.  The Physician may terminate this Agreement without cause upon ninety (90) days notice.  The Company may terminate this Agreement without cause upon ninety (90) days notice.

9. **INSURANCE**

    Company shall provide and pay for professional liability insurance covering Physician for services provided under this agreement for the Company in an amount not less than the minimum required by the Hospital or the state in which the Hospital is located.  Company shall maintain such professional liability insurance subsequent to the termination of this Agreement for a period that exceeds any applicable statute of limitations in the state in which the Hospital is located or shall purchase an extended reporting endorsement.

10. **MISCELLANEOUS**

    A.  This Agreement shall be governed by, and interpreted in accordance with, the laws of the state where services are provided.  Any particular provision of this Agreement determined to be invalid or unenforceable shall not affect the other provisions of this Agreement.  Waiver by the Company of a breach of any provision of this Agreement shall not operate nor be construed as a waiver by the Company of any subsequent breach by the Physician.  All covenants set forth herein shall be binding upon, and shall inure to the benefit of, and be enforceable by or for, the Company's successors and assigns. This Agreement, being for the personal services of the Physician, shall not be assignable by the Physician.  The portions of any and all paragraphs of this Agreement which pertain to rights and obligations extending beyond the term of this Agreement shall survive termination.  This Agreement amends and voids any previous agreement that contradicts with the express terms of this Agreement between the parties.  The Physician agrees that the professional services performed pursuant to this Agreement will be the sole responsibility of the Physician and the Physician shall be solely liable for his/her acts. It is the responsibility of the Physician to provide the Company with all the information, applications and signed documents required by the Hospitals, payers, billing service and insurance carriers in a prompt and timely manner.  If the Physician fails to provide the necessary applications, forms or information required by the above, the Company may immediately terminate this Agreement and seek any and all relief allowed by law.

    B.  The Physician agrees and intends to provide physician services as part of a qualified clinically-integrated joint arrangement.  As part of this arrangement, the Physician will participate in active and ongoing programs to evaluate and modify practice patterns of, and create a high degree of interdependence and cooperation among, the Physicians who participate in the arrangement, in order to control costs and ensure the quality of service provided through the arrangement.  The Physician expressly warrants that any agreement concerning reimbursement or other terms and conditions entered into or within via this arrangement is reasonably necessary to obtain significant efficiencies through the joint arrangement.

    C.  This Agreement may be amended from time to time by written agreement signed by each of the parties.

This Agreement has been executed as witnessed at EXHIBIT B attached hereto.


Initials _____

4

PHYSICIAN AGREEMENT
EXHIBIT B

COMPANY/
TAXPAYER ENTITY:       **JAMES RIVER HOSPITALIST GROUP, LLC**
LOCATION:              **HENRICO DOCTORS' HOSPITAL * PARHAM DOCTORS'HOSPITAL * RETREAT DOCTORS'HOSPITAL**
PHYSICIAN:             Juan Munoz, MD
REIMBURSEMENT:

   Productivity Component:

   Company shall compensate Physician the greater of A or B calculated monthly:
   A) $1483.52 (day shift), $1538.46 (night shift); $1100.00 (swing shift); or
   B) $64.46 per hour for daytime shifts  + $25 per wRVU
   $80.00 per hour for swing shift + $25 per wRVU
   $106.12 per hour for night time shifts + $25 per wRVU

   Quality Component:
   Inherent in Physician's compensation is the expectation that the following five items are met.  Failure to meet these will result in the deduction in Physician's compensation by 4% of the hourly rate (up to a total of 20%) for each item not met each month.
   1) No Core Measure Fall-Outs
   2) No Significant Quality Concerns (verified by peer review, chart review and/or other investigation when appropriate)
   3) No Substantiated Written Complaints from medical staff or patients (verified by peer review, chart review and/or other investigation when appropriate)
   4) A cooperative and positive attitude
   5) Participation toward achieving Company's quality and efficiency goals

Determination of any above fallouts will be determined by the medical director, regional president, chief medical officer of the company and a panel of 3 physicians elected by the group, after discussion with the physician.

   Monies from any item that is not met in a particular month will be redistributed to the hospitalist physicians providing services at Hospital who met all five items during that same month the deductions were made.

   Company maintains the rights to adjust, modify, or change Physician's compensation upon ninety days' notice.


PROFESSIONAL LIABILITY      The Company shall provide and pay for professional liability insurance
INSURANCE:                  covering Physician for services provided under this Agreement for the
                            Company.  Company shall maintain such professional liability insurance subsequent to the termination of this Agreement for a period that exceeds any applicable statute of limitations in the state in which the Hospital is located or shall purchase an extended reporting endorsement.

In witness whereof, the parties hereto have executed this Exhibit B and all the terms and conditions described in PHYSICIAN AGREEMENT and EXHIBITS thereto.
AGREEMENT AND ACCEPTANCE:

*Juan Carloz Munoz Gonzalez*                             Mar 4, 2015
Juan Carloz Munoz Gonzalez (Mar 4, 2015)                 _____
Juan Munoz, MD                                           Date


_____                           _____
**JAMES RIVER HOSPITALIST GROUP, LLC**                   Date

# PHYSICIAN AGREEMENT
# EXHIBIT B

COMPANY/
TAXPAYER ENTITY: **Spotsylvania Hospitalist Group, LLC**
LOCATION: **SPOTSYLVANIA REGIONAL MEDICAL CENTER**
PHYSICIAN: Juan Munoz, MD
REIMBURSEMENT:

    Productivity Component:

        Physician shall work for Company a total of 182 twelve hour shifts per year and an average minimum of 15 twelve hour shifts per month, or the equivalent (for example 18 ten hour shifts), and in exchange, Company shall compensate Physician the greater of A or B calculated monthly:

        A)    $1,483.52 per shift; or
        B)    $62.68 per hour for daytime shifts (7am-7pm) + $25 per wRVU
                $101.55 per hour for night time shifts (7pm-7am) + $25 per wRVU

    Quality Component:

        Inherent in Physician's compensation is the expectation that the following five items are met. Failure to meet these will result in the deduction in Physician's compensation by 4% of the hourly rate (up to a total of 20%) for each item not met each month.

        1)    No Core Measure Fall-Outs
        2)    No Significant Quality Concerns (verified by peer review, chart review and/or other investigation when appropriate)
        3)    No Substantiated Written Complaints from medical staff or patients (verified by peer review, chart review and/or other investigation when appropriate)
        4)    A cooperative and positive attitude
        5)    Participation toward achieving Company's quality and efficiency goals

        Monies from any item that is not met in a particular month will be redistributed to the hospitalist physicians providing services at Hospital who met all five items during that same month the deductions were made.

    Company maintains the right to adjust, modify, or change Physician's compensation upon ninety days' notice.

PROFESSIONAL LIABILITY INSURANCE: The Company shall provide and pay for professional liability insurance covering Physician for services provided under this Agreement for the Company. Company shall maintain such professional liability insurance subsequent to the termination of this Agreement for a period that exceeds any applicable statute of limitations in the state in which the Hospital is located or shall purchase an extended reporting endorsement.

In witness whereof, the parties hereto have executed this Exhibit B and all the terms and conditions described in PHYSICIAN AGREEMENT and EXHIBITS thereto.

AGREEMENT AND ACCEPTANCE:

*Juan carlos munoz Gonzalez (Sep 21, 2015)*
_____    Sep 21, 2015
Juan Munoz, MD                                  _____
                                                                     Date

*Hailey Paley (Sep 22, 2015)*
_____    Sep 22, 2015
Spotsylvania Hospitalist Group, LLC              _____
                                                                       Date

# PHYSICIAN AGREEMENT

This PHYSICIAN AGREEMENT ("Agreement") is entered into, and effective 9/1/2015 the "Effective Date"), by and between the company identified in Exhibit B ("Company") and physician identified in Exhibit B ("Physician") attached hereto and incorporated herein by reference.

WHEREAS, the Company is engaged in the business of providing hospitalist services to hospitals or healthcare systems ("Hospital");

WHEREAS, the Physician represents and warrants to be a duly qualified and licensed physician, and to meet the qualifications required thereof under the Hospital Agreement and desires to provide such hospitalist services;

NOW THEREFORE, in consideration of the mutual covenants and agreements contained in this Agreement, the parties hereto, each intending to be legally bound hereby, agree as follows:

**1.    PHYSICIAN'S SERVICES**

A.   The Physician agrees to be credentialed in accordance with the Hospital Rules and Regulations following the execution of this Agreement. If, for any reason, the Physician is not credentialed or accepted as a member of the medical staff of a Hospital, this Agreement may be terminated immediately at the sole discretion of the Company. If, for any reason, the Physician is knowingly in violation of the Hospital Contract, or Physician's membership on the medical staff of a Hospital is suspended, revoked, or terminated, or Hospital requires the replacement of the Physician, this Agreement may be terminated immediately at the sole discretion of the Company.

B.   The Physician shall submit schedule requests one month prior to each three month scheduling block. The Company will attempt to honor schedule requests to the extent they are consistent with the Hospital Agreement, shift availability, and practicable. The Physician on occasion may be asked to work shifts he/she has not requested. Shift distribution will be equitable and mutually agreed upon by the parties. Desirable shifts, with respect to productivity potential, will be distributed on an equitable basis and are not subject to preference by seniority within the Company.

C.   If the Physician is unable to fulfill his/her work obligations under this Agreement for a temporary period for personal or health reasons acceptable to the Company, the Physician shall promptly notify the Company in writing in advance of such temporary unavailability and of the reason. Any substitute physician must comply with all the terms of this Agreement and the Hospital Agreement. Parties may from time to time adopt backup and scheduling policies.

D.   For recruitment, planning, and physician satisfaction purposes, once per year, by July 1st, Physician shall submit to the medical director in writing the number of shifts per month Physician would like to regularly receive per month. The number of shifts requested will be honored whenever feasible and physicians who have been in the Company for greater than one year will be given priority with regards to the number of available shifts requested per month. The number of shifts allotted to Physician per month can only be changed if another physician in the group also agrees to change shift allotment (because the number of shifts available each month is fixed). Physician understands that flexibility is essential to hospitalist staffing and that, if needed; Physician may be requested to work as many as two shifts per month more than the Physician's requested number of shifts. In addition, any part-time Physician (working 120 hours or less a month) agrees to work a proportionate number of nights, weekends, and holidays.

Initials _jcm_
jcmg

1

2. **PHYSICIAN COMPENSATION**

    A. The Physician shall be paid on or about the fifteenth day of each month following the month of service.

    B. The Company agrees to compensate the Physician pursuant to Exhibit B.

3. **PROFESSIONAL STANDARDS OF PHYSICIAN**

    A. The Physician represents that he/she is duly qualified and licensed to practice medicine in the United States of America and the applicable state of service. If the Physician's license to practice medicine is revoked or suspended, the Company shall have the right to terminate this Agreement immediately.

    B. The Physician agrees that, in the performance of his/her duties under this Agreement, he/she shall observe standards of professional medical practice and ethics, including those required by the contract with the Hospital or by the medical staff of the Hospital, and any failure on the part of the Physician to do so shall constitute grounds for the immediate termination of this Agreement by the Company. The Physician shall comply with all general rules and regulations established by the Hospital for the provision of services.

    C. If any functions of this Agreement are not being performed by the Physician, the Company may require the physician to complete such funcitons. Functions include, but are not limited to, the submission of complete, correctly prepared charts. Repeated non-perfomrance of this or other funcitons of this Agreement may result in an adjustment of the Physician's compensation or termination of the Agreement.

    D. The Physician agrees to timely notify the Company orally (and immediately confirmed in writing) of any patient or Hospital claims of which the Physician has knowledge or in which he/she is involved while rendering medical service at the Hospital. A patient or Hospital claim may be an accident or a situation that results in a claim or threat of a claim.

4. **RECORDS**

    All business and financial records of the Company including, but not limited to, invoices, billings and all records pertaining to providing hospitalist service treatment as herein set forth shall be the property of the Company during the term and following termination of this Agreement. The Company agrees to provide the Physician with a patient billing summary. This clause specifically excludes billing summaries and/or confidential information related to other Physician's working with the Company.

5. **CONFIDENTIALITY**

    The Physician understands and agrees with the Company's express desire that all of the Company's business, financial, medical, legal and other affairs be conducted with the utmost respect for the privacy and confidentiality of the patient, Physician and Company. The parties agree, at all times during and subsequent to termination of this Agreement, to maintain in all respects the privacy and confidentiality of the affairs of the parties. The parties agree that any and all information acquired under this Agreement may not be used except as may be permitted by this Agreement in the normal course of business. The conduct of the parties shall be compliant with all applicable state and federal laws.

Initials *jcmg*

2

6. **LIMITATION OF PRACTICE**

    A. During the term of this Agreement, the Physician agrees not to accept as a private patient into an outpatient clinic, outside the terms and scope of this Agreement, any patient who is admitted to and treated in the Hospital unless Physician has received prior written consent of the Company or Hospital. The Physician further agrees not to solicit patients for the sale of goods and services. In addition, the Physician agrees not to solicit client Hospitals for physician services outside the terms and conditions of this Agreement.

    B. All fees, compensation, monies and other things of value received or realized as a result of the performance of hospitalist services by the Physician at the Hospital, shall belong to, be paid to, be assigned to and be delivered to the Company. The Physician agrees, to the extent possible, upon request by the Company, to render an accounting of all transactions which relate to the Physician's practice (within the scope of this agreement) as a Physician during the term of this Agreement.

    C. The Physician hereby appoints the Company as representative and attorney-in-fact for financial matters related to services performed by Physician under this Agreement, including managed care contracting, insurance and third party payer negotiations, and account collections. The Physician shall agree to participate in managed care plans and agreements in which applicable Hospitals participate in accordance with state and federal law.

    D. Parties agree to abide by the applicable Hospital Agreement.

7. **INCOME TAX TREATMENT**

    This Agreement constitutes an independent contractor relationship between the Company and the Physician. The Company shall not have any responsibility to withhold any taxes or other assessments that may exist in an Employer/Employee relationship, the payment of all such taxes and other assessments being the responsibility of the Physician and shall survive the termination of this Agreement. In the event the Company is called upon at any time for an assessment regarding any of the foregoing, the Physician shall, upon ten (10) days notice, provide the Company the funds with which to pay such assessment. Furthermore, the Physician shall have no claim under this Agreement or otherwise against the Company for vacation, pay, sick leave, retirement benefits, social security, workman's compensation, disability or unemployment insurance benefits of any kind. It is further understood that the Company shall neither have, nor exercise any control or direction over, the methods by which the Physician agrees to perform the Physician's said work and professional functions. The Company shall neither have, nor set standards for the duration or time under which the Physician performs the Physician's work and professional functions. The Physician agrees to perform his/her said work and professional functions at all times in strict accordance with currently approved methods and practices in the field of medicine in general and hospitalist medicine in particular, and in accordance with the standards required by the Hospital Agreement and the medical staff of the Facility.

8. **TERM AND TERMINATION**

    A. This Agreement is intended to commence on the Effective Date and to continue until 8/31/2016 and will renew automatically for subsequent one (1) year terms thereafter unless sooner terminated in accordance with the terms and conditions of this Agreement.

    B. The Company may terminate this Agreement immediately if the Hospital Agreement becomes null and void, suspended or terminated in whole or in part, or immediately, if Company is dissolved, or immediately, upon Company's determination that Physician is disabled for a period exceeding thirty (30) days. Company may terminate this Agreement at any time for cause, or personal or

Initials 

3

professional misconduct. The Physician may terminate this Agreement without cause upon ninety (90) days notice. The Company may terminate this Agreement without cause upon ninety (90) days notice.

9. **INSURANCE**

   Company shall provide and pay for professional liability insurance covering Physician for services provided under this agreement for the Company in an amount not less than the minimum required by the Hospital or the state in which the Hospital is located. Company shall maintain such professional liability insurance subsequent to the termination of this Agreement for a period that exceeds any applicable statute of limitations in the state in which the Hospital is located or shall purchase an extended reporting endorsement.

10. **MISCELLANEOUS**

    A. This Agreement shall be governed by, and interpreted in accordance with, the laws of the state where services are provided. Any particular provision of this Agreement determined to be invalid or unenforceable shall not affect the other provisions of this Agreement. Waiver by the Company of a breach of any provision of this Agreement shall not operate nor be construed as a waiver by the Company of any subsequent breach by the Physician. All covenants set forth herein shall be binding upon, and shall inure to the benefit of, and be enforceable by or for, the Company's successors and assigns. This Agreement, being for the personal services of the Physician, shall not be assignable by the Physician. The portions of any and all paragraphs of this Agreement which pertain to rights and obligations extending beyond the term of this Agreement shall survive termination. This Agreement amends and voids any previous agreement that contradicts with the express terms of this Agreement between the parties. The Physician agrees that the professional services performed pursuant to this Agreement will be the sole responsibility of the Physician and the Physician shall be solely liable for his/her acts. It is the responsibility of the Physician to provide the Company with all the information, applications and signed documents required by the Hospitals, payers, billing service and insurance carriers in a prompt and timely manner. If the Physician fails to provide the necessary applications, forms or information required by the above, the Company may immediately terminate this Agreement and seek any and all relief allowed by law.

    B. The Physician agrees and intends to provide physician services as part of a qualified clinically-integrated joint arrangement. As part of this arrangement, the Physician will participate in active and ongoing programs to evaluate and modify practice patterns of, and create a high degree of interdependence and cooperation among, the Physicians who participate in the arrangement, in order to control costs and ensure the quality of service provided through the arrangement. The Physician expressly warrants that any agreement concerning reimbursement or other terms and conditions entered into or within via this arrangement is reasonably necessary to obtain significant efficiencies through the joint arrangement.

    C. This Agreement may be amended from time to time by written agreement signed by each of the parties.

This Agreement has been executed as witnessed at EXHIBIT B attached hereto.

Initials _jcmg_

4